Apotex Corp. v. Hospira Healthcare India Thank you, Your Honor. Good morning again. My name is James Matthews. I represent Apotex Corp. This case comes to you on appeal from decisions on motions to dismiss from the Southern District of New York. The case is an unfair competition case between Apotex and its larger rival, Hospira. And let me, by way of illustration, discuss one of the drugs at issue in the case. The drug is Cefepime. In 2012, Apotex was selling Cefepime in the United States market, supplied to it by Hospira. At that time, Apotex market share was at or near 50% of the U.S. market for Cefepime. In 2013, Hospira launched its rival product, Maxapine. By 2016, Hospira had managed to obtain about a 50% share of the U.S. market, and Apotex 50% share had diminished to nearly zero. How did Hospira do that? They did that by refusing to supply Cefepime to Apotex under the parties' contract, and by stealing Apotex's confidential information, its prices, its customer list, its production schedules, and knowledge about its supply constraints. In short, not by competing on the merits, but instead by using the leverage it had obtained under the parties' supply agreement, Hospira was able to destroy Apotex's business and steal Apotex's customers and make them its own. The pattern that I've just described with Cefepime repeated itself with all of the other drugs at issue in the case. The district court below concluded that this conduct, as alleged, in fact stated the claim under Florida's Deceptive and Unfair Trade Practices Act, also referred to as FDIPTA. But with the exception of the FDIPTA claim, the district court dismissed all of Apotex's other non-contract claims. And in addition, the court below... The district court allowed the breach of contract claim. Isn't that correct? Yes, Your Honor. In fact, the defendant didn't even challenge the breach of contract claim. So that he and all the other claims were duplicative of the breach of contract claim. Isn't that correct? Yes, Your Honor. Those are the words that the judge used in his... And you are appealing that decision. You think you have a separate claim under these chorts. These alleged chorts. Yes, Your Honor. But he didn't find a duty apart from breach of contract, which is the secret one-on of a tort claim. I'm sorry for interrupting you. It's the delay. You may respond. Tell me what makes a duty. I disagree that he didn't find a duty. He did find a duty. He recognized that under New York law, there is a well-established duty not to willfully injure another party and its property. What he concluded, however, was that the allegations in the complaint did not, quote, and this is his words, plausibly state a claim from which a reasonable trier of fact can conclude that Hospiro acted solely with intent to injure Apotex. And we have two issues with that. One is that the standard solely with intent to injure Apotex is nowhere articulated in the New York cases. It is merely to injure Apotex. The second is, on the allegations as set forth in the complaint, we think it is not reasonable that the judge concluded that no trier of fact could have accepted those allegations as true and concluded that, in fact, the duty was breached. And that is why, Your Honor, I began talking about cefepine, because those allegations about cefepine fall squarely within the New York line of cases, which begin with Rich, as cited in our brief, and Abermarley, and then your own case from this court, Carvel, which demonstrate that where the tort is not the breach of the contract, but rather the breach of the contract is merely one part of the tort, and the facts demonstrate... You're arguing breach plus. Is that a breach plus? Well, I don't... So, yes, Your Honor, I will call it breach plus, but I want to make clear that it's really many facts plus the breach. In other words, Hospiro engaged in many independent acts separate and apart from the breach of the contract. Those acts included going to customers and revealing to those customers our confidential information. Those acts including using the confidential information Hospiro obtained from us to sort of plot its strategy and affect its strategy going forward. And it's that combination of factors which clearly establish that, separate and apart from whether Hospiro breached the contract, there are many other factors which the contract, when breached, choking off the supply of Apotex, allowed them to affect this scheme. And if I may, Your Honors, I'd like, if I could... I'm sorry. Let me get into the certification issue before your time expires. Yes, Your Honor. On the certification issue, it is clear from the party's briefs, first of all, that there is no appellate authority from the state of Florida on the issue of whether an injured competitor can recover lost profits under FDIPTA. There is, in fact, no authority from any state case in Florida on that point. Is there not authority from federal district courts? There is split authority from the federal district courts. And where's the trend? Your Honor, each party has cited many, many cases. Each party claims that the trend favors their side. The 11th Circuit, in an unpublished opinion, Marco Island, which recited in the briefs, said the trend was towards allowing lost profits. In another case, they didn't allow lost profits, another unpublished case, but that was a consumer case, not a competitor case. As to competitor cases, there is no state court opinion at any level addressing this issue, given the obvious importance of the question to the Florida courts. If the court believes that what is really an easy question of statutory interpretation here, which is what is the meaning of actual damages within FDIPTA, and all you have to do is look at Florida common law to get that answer, and the answer is it's the damages necessary to compensate the injured parties. You know how long it takes. I do not know the answer to this question. The Florida Supreme Court, upon certification, to resolve matters, to resolve questions. I've polled my colleagues that practice in Florida, but I can't give you an answer with any certainty. We have no experience. I mean, I don't think we've ever certified a case to the Florida Supreme Court. Not in my memory. So we don't want to drop this case down a well and never see it again. So we're very interested in what their practice is. Well, I can't, you know, I don't want to say something that I don't know to be true. Fair enough. I can't tell you. Fair enough. You've reserved three minutes for rebuttal. Yes, Your Honor. You'll turn to the appellee. Thank you. Thank you, counsel. May it please the court, Luke McLeod on behalf of Hospira. I'll start with the tort claims. Judge Brewer, you were exactly right. The tort claims that Appetex has alleged are duplicative of the breach of contract claims. They have split those tort claims across several different counts of the complaints, but fundamentally there are three basic factual allegations that underpin those tort claims. There is the allegation, first of all, that we delayed in supplying product or failed to supply product entirely. Secondly, there is an allegation that we misused confidential information of Appetex to set our own prices. And the third allegation, which is related to the second, is that we competed with Appetex by selling products to its customers in violation of the provisions of the contract. All of those allegations are the same allegations that underlie the breach claims and the duties that we are supposed to have violated. And the tort claims are contractual duties. They are not independent tort duties that exist extraneous to or collateral of the contract. Mr. Matthews mentioned the duty not to willfully harm another party, but the district court examined that duty in the opinion below and explained in detail why Appetex's allegations were not sufficient to state a claim for a breach of that duty in this case. The New York cases are clear that a claim based on a breach of that duty not to willfully harm another can only be found on rare occasions. Well, we have the duty of fair dealing that's built into every contract executed in New York. I think that's what counsel was alluding to and what the district court was alluding to. Are you saying it doesn't exist? No, Your Honor, that's not our position. I actually think that the duty of fair dealing is a separate issue from the duty not to willfully harm another. Appetex does have a claim directed to a breach of the duty of fair dealing. The district court dismissed that claim for a separate reason, which is that in a case where you have a breach of contract claim and the allegations that underlie the breach of the duty of fair dealing claim are identical, then it's redundant because a breach of the duty of fair dealing is simply a breach of contract. So unless you can point to different factual allegations as the basis for your implied duty claim, there is no basis for bringing the two claims in parallel. Counsel argues, opposing counsel argues, that you took their private records that you were entitled to under the contract and used them against the company. Doesn't that trigger the duty of fair dealing? You took their customer list and sold drugs to their customer list, which you only had access to because you had a contract with them. Doesn't that raise the duty of fair dealing? No, Your Honor. Then why not? The duty not to willfully harm another is only triggered in rare circumstances. The New York Court of Appeals addressed this issue in the Cargill 2 case and it said that where the parties' economic relationships are governed by the contract, it's that contract that should control. A claim that you are competing in a way that's inconsistent with the contractual relationship does not state an independent tort. The key point to know on the confidential information allegation is that, as Your Honor alluded to, we had a right to that confidential information. This is not a case like the Reid case or the Sirius case that's cited in the Texas brief. You didn't steal the confidential information. You got it under the terms of the contract, but then you used it in ways that weren't contemplated, allegedly. Your Honor, that's exactly right. The allegation is that we used it in ways that exceeded the authorization under the contract. But that is fundamentally the question of whether we breached the bounds of the agreement. And they have a separate breach of contract claim that's premised on the idea that we misused your confidential information. The cases that they cite where a claim is brought for a misuse of confidential information and the court finds it a sufficient independent tort concern allegations where the information is obtained by fraud or where the contract was itself a shame. That's not an allegation that aptX has made here or could make here. This was a real agreement. We really performed under the agreement. Of course, aptX has complaints about the quality of our performance just as we have complaints about the quality of its performance that are mentioned in our counterclaim. But those issues should be resolved through the contract action, as the New York Court of Appeals put it in Carvel 2. We don't want juries after the fact trying to impose a code of conduct on the parties when they have already set one out in their contract. Counsel, tell me why you oppose certification to the Florida Supreme Court even though we all agree we don't know how expeditious a process it is. Why would you oppose it? Your Honor, we don't believe that any of the factors this court traditionally considers when it's evaluating certification requests is satisfied. The first question that the court asks itself is whether it can confidently predict the outcome of the case that were to be certified There are no binding cases. Isn't it true that there are no binding cases from the Florida Supreme Court on the answer to the question you're asking? Your Honor, it's true that there is no case from the Florida Supreme Court, but there is a plethora of authority from the Florida District Courts of Appeals, the intermediate state courts that address the issues that are relevant to resolving aptX's claim. The Florida District Courts of Appeals have held that the term actual damages for purposes of the Florida Act means benefit of the bargain damages. That's been established as far back as the Rollins case from 1984. The Florida courts have also held, and aptX in fact concedes, that actual damages for purposes of the Florida Act does not include consequential damages. And we know that lost profits are the quintessential example of consequential damages. So I would submit that given the clarity of Florida law on those two issues, there is no basis for finding that the statutory language is ambiguous or that certification is necessary. Even if the court were to disagree on that point, though, I think the other factors the court considers, again, cut against certification requests. One of the factors the court asks is whether resolution of the certified question would be dispositive of the issues on appeal. That would not be the case here. There are a number of other issues. There are being raised by aptX that will need to be resolved by this court regardless of the outcome of the certified question. And so in our view, it would not be, as a matter of judicial efficiency, necessary to certify. Is there a dispute here that aptX is a consumer for purposes of this Florida statute? Your Honor, they have alleged that they are consumers for purposes of the Florida statute in the first amended complaint. So the argument they make about the remedies available to competitors really is not implicated at all by this dispute. Whatever remedies are available to competitors are irrelevant because aptX still has the ability to obtain the benefit of the bargain damages that it is entitled to as a consumer under the Florida Act or to establish a violation. So in Midway Labs, one of our district court judicial colleagues in the southern districts of Florida reviewed recently in May the state of the law on this central issue and noted the split within the state. You're telling us, I think, that there's some form of, you suggested that there might be a convergence of views, but that's contrary to what the district court judge in Florida, who's much closer to Florida law than we are, indicated. What should we make of Midway Labs? Because that's a signal to me to beware when a lawyer tells me, oh, it's very clear. Two responses, Your Honor. So in case there was any uncertainty about my earlier answer, the clarity that I'm referring to is on the definition of actual damages in the Florida state courts. That is clear, and that's not disputed by aptX. The dispute that the Midway Labs case discusses is whether a 2001 amendment to the Florida Act changed the remedies that would be available to competitors. It's true, as Mr. Matthews pointed out, there is a split of authority on that issue. The district court actually addressed this point in its reconsideration decision and found, correctly in our view, that the weight of authority actually goes in our favor and concludes that lost profits are not available even to competitors under the Florida Act. I should know the answer to this question, but are pursuant to whatever the Florida certification rule or law is, may district court judges certify a question? So, for example, in Connecticut, they're entitled to, but can you do that if you're a district court judge to the Florida Supreme Court? No, Your Honor. It's only the United States Courts of Appeals or the highest court of another state. And, Your Honor, the final point I would make on the certification request is that even if there were a divergence of views on the district courts, we don't think that's a basis for certification. The question is whether state law is clear and the relevant state courts have weighed in and are clear on the issues. Do you know the answer, by the way, to the question? Maybe you've also told your colleagues of how expeditious the Florida Supreme Court is, at least in the context of some courts. Some state high courts are a little faster, actually, when they are responding to a certified question from a federal court. But do you know the answer? Because I do not. I do not, Your Honor. I also told my colleagues, and we don't have a sense. My understanding is that it just depends on the nature of the question and how busy the Florida Supreme Court is. Of course. Of course. Thank you, counsel. And Mr. Matthews, you have reserved three minutes for a minute. Your Honor, would you respond to the answers on certification, on whether it's required, whether we should do it? Yes, Your Honor. You should do it. It does meet the standard. I mean, clearly, this is an important question of Florida law. Clearly, it is a question that no court of appeals in Florida has weighed in on. Can you be clear about that? I'm sorry, Your Honor. So, I've been a little puzzled by the procedural posture of this case because, as I understand it, there is no diversity jurisdiction anymore. Correct? That is correct, Your Honor. So, and I've really been teasing this out as my public knows because I'm puzzled as to what will happen as a result of that. So, if we were to send this back, what would happen? There would be no diversity jurisdiction. It would go to a New York State court, and then the New York State court would have this question of Florida law. Is that correct? Well, that would depend on what you did, I believe, Your Honor, with this case. Let's say we didn't start it. What would happen? If you sent it back without reaching the merits, on some basis such as that you thought there was not jurisdiction, I believe our view is that the decision of the district court would likely, likely become final and that Hospiro would then argue to the state court that the final decision of the district court on these issues was binding on Apodex, and that is precisely the result we seek to avoid here because we have a decision of the district court that was made when it had jurisdiction, which is adverse to our position. Because it's a decision based on the First Amendment complaint. That's exactly correct, Your Honor. And so what we are asking this court to do is to reverse and vacate the orders challenged in the appeal, and in that event, with the orders vacated, then in the state court proceeding, Hospiro will not be able to take the position that the case has been decided and the ruling is binding in the state court proceedings. Alternatively, if the court were to reverse and vacate and rule in our favor on the issues, they would be binding in the other direction. Part of the oddity, Mr. Matthews, to me, but I may be completely wrong, is that, in essence, we are certifying a question on behalf of a New York state court. So right now, if it goes back, you agree, it goes through the district court back to a New York state court because there's no more diversity, so we would be asking for certification of a question and when we received a response from the Florida Supreme Court, who would we send that back to? To the New York state court? There are many procedural puzzles here that I've not encountered before. Neither have I, Your Honor, but I would say that I think the answer is you're actually not sending a decision to the New York state court. I know that as a very typical matter, but practically speaking, that's what we would be doing. Well, it's true, but you are deciding a case that is very much live before you and you are making a ruling on whether the judgment in the district court is or is not correct and the consequence of that ruling is, if there is no ruling, is that the appellees here will likely take the position in the state court proceedings that the district court's judgment is binding, in which case, even if the Florida Supreme Court were to disagree, without this court weighing in and issuing an order affecting the district court's earlier judgment, the wrong law may be applied down the road. And so, no, you are deciding a live case with the power to make a decision that will have an impact on a live case. It's just that the case is not proceeding in the district court, it's proceeding in the state court. But it's the district court's decisions that create the problem and, therefore, if the district court's decisions are incorrect, they should be corrected. They should not... Is that issue right? Since the district court has not made any decision yet? Well, the district court did issue an order. The district court here, the Southern District of New York... It's up to the state court. It's not... The question of whether it would be binding is not yet determined. That's up to the state court, the New York state court. Right. But that's your concern. That's the fear. I understand. That's the concern. Thank you. Thank you both very much. I think you're awesome. Thank you. I appreciate it.